**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JAVIER RIVERA FRANCO, #1376945,**[1] | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **3:11-CV-2619-B-BK** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Div.,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and Special Order 3, this case was referred to the United States Magistrate Judge. Petitioner, a Texas state inmate, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, through counsel. For the reasons that follow, it is recommended that the habeas petition be denied.

**I. BACKGROUND AND PROCEDURAL HISTORY**

The State of Texas indicted Petitioner for attempted capital murder (No. F05-45713), aggravated assault (No. F05-49271), and evading arrest or detention with a vehicle (No. F05-45718). The cases were consolidated for trial in the 283rd District Court of Dallas County, Texas, and after finding him guilty of all charges, a jury sentenced Petitioner to 75 years' imprisonment for attempted capital murder, ten years' imprisonment for aggravated assault, and two years' imprisonment for evading arrest, all to be served concurrently. 8 RR 49-51.[2] The

---

[1] The docket sheet and orders initially listed Petitioner as "Rivera Javier Franco," the correct name of "Javier Rivera Franco" has now been added.

[2] "RR" refers to the reporter's record at trial for the consolidated proceedings in cause numbers F05-45713-VT, F05-49271-VT, and F05-45718-VT. Since there are nine

convictions were affirmed in separate unpublished decisions. *Franco v. State*, No.

08-06-00280-CR, 2007 WL 2200468 (Tex. App.–El Paso 2007, pet. ref.) (attempted capital

murder); *Franco v. State*, No. 08-06-00282-CR, 2007 WL 2200475 (Tex. App.–El Paso 2007,

pet ref.) (aggravated assault); *Franco v. State*, No. 08-06- 00281-CR, 2007 WL 2200470 (Tex.

App.–El Paso 2007, pet ref.) (evading arrest or detention).

Petitioner later submitted three state habeas applications, which the Texas Court of

Criminal Appeals (TCCA) denied.[3] *See Ex parte Franco*, No. WR-72017-04, 2011 WL 3761348

(Tex. Crim. App. Aug. 24, 2011) (attempted capital murder) (following remand to the state

habeas court to conduct a hearing, the TCCA denied the application with written order on the

findings of the trial court without a hearing); *Ex parte Franco*, No. WR-72017-03, SHCR-03

2407259 at "Action Taken" sheet (Tex. Crim. App. Jun. 9, 2010) (aggravated assault) (denying

application without written order); *Ex parte Franco*, No. WR-72017-05,  SHCR-05 2407262 at

"Action Taken" sheet (Tex. Crim. App. Jun. 9, 2010) (evading arrest or detention) (dismissing

application because the sentence had discharged).

Subsequently, Petitioner filed this federal habeas petition challenging his convictions,

raising essentially the same claims that he presented in his state applications.  In two grounds, he

alleges trial counsel was ineffective in failing to obtain the services of a qualified

firearms/ballistic forensic expert witness, and in failing to investigate and discover that State's

---

volumes to the reporter's record, the Court will follow the same citation format used by
Respondent: "[volume number] RR [page]."

[3] "SHCR," followed by the "EventID" and page numbers, refers to the State Habeas
Clerk's Records in Nos. 72,017-03 through -05.  The Court will follow the same citation format
used by Respondent:  "SHCR[-03 through-05] [EventID] at [page]."

Exhibits 7 and 27 revealed evidence helpful to his defense.  (Doc. 2 at 3.)   Respondent raises

jurisdictional and statute of limitations issues, and argues the petition lacks merit.  (Doc. 12.)

## II.  ANALYSIS

### A.  No Jurisdiction to Review Conviction in No. F05-45718-VT

A federal court has jurisdiction to consider a writ of habeas corpus "in behalf of a person

*in custody* pursuant to the judgment of a state court only on the ground that he is *in custody* in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a)

(emphasis added); *see also Maleng v. Cook,* 490 U.S. 488, 490 (1989) (statutory language

requires "habeas petitioner be 'in custody' under the conviction or sentence under attack at the

time his petition is filed").

Petitioner was not in custody under the judgment in No. F05-45718-VT for evading arrest

or detention when the petition *sub judice* was filed.  He discharged his two-year term in that case

long before filing the federal petition at issue here.  Thus, the Court lacks jurisdiction to consider

the claims relating to that conviction.

### B.  Limitations Period Bars Review of Conviction in No. F05-49271

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-

year statute of limitations for state inmates seeking federal habeas corpus relief.  *See* 28 U.S.C. §

2244(d).  The one-year limitations period is calculated from "the date on which the judgment

became final by the conclusion of direct review or the expiration of the time for seeking such

review."  28 U.S.C. § 2244(d)(1)(A); *see Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009)

(explaining rules for calculating the one-year period under section 2244(d)(1)(A)).  Sections

2244(d)(1)(B)-(D) are inapplicable here.[4]

Because Petitioner filed a petition for discretionary review (PDR), his conviction became final on February 5, 2008, ninety days after the TCCA refused his PDR on November 7, 2007. *See Roberts v. Cockrell,* 319 F.3d 690, 694 (5th Cir. 2003) (where an appellant does not seek a writ of certiorari from the United States Supreme Court, "finality [is] established by the expiration of the ninety-day period to seek further review with the Supreme Court."). As of the filing of his state habeas application on September 19, 2008, 226 days of the one-year limitations period had elapsed. The state application remained pending until its denial on June 9, 2010, statutorily tolling the one-year limitations period. *See* 28 U.S.C. § 2244(d)(2) (statutory tolling available during pendency of properly filed state application). The one-year period resumed running the next day, June 10, 2010, and expired 139 days later on October 27, 2010. Petitioner, however, did not file his federal petition until October 4, 2011, more than 11 months after the one-year statute of limitations expired. Because he does not request equitable tolling or present the type of due diligence and extraordinary circumstances required for equitable tolling (Doc. 13), *see Lawrence v. Florida*, 549 U.S. 327, 336 (2007), his federal petition is untimely as to his aggravated assault conviction in No. F05-49271.

## C.  Merits Review of Conviction in No. F05-45713

Habeas corpus relief is precluded unless the state court's adjudication on the merits

(1) resulted in a decision that was contrary to, or involved an unreasonable

---

[4] Petitioner's pleadings allege no state-created impediment under subparagraph (B) that prevented timely filing of the claims. Nor does Petitioner base his grounds on any new constitutional right under subparagraph (C). With regard to subparagraph (D), the Court determines that the facts supporting the grounds for relief became or could have become known prior to the date on which Petitioner's conviction became final.

application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in
light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d), as amended by the AEDPA.  "This difficult to meet and highly deferential

standard . . . demands that state-court decisions be given the benefit of the doubt," *Cullen v.*

*Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks omitted), and

forbids federal courts "from using federal habeas corpus review as a vehicle to second-guess the

reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. ___, 130 S. Ct. 1855, 1866 (2010).

In addition, this "backward-looking language" confines federal habeas review to the record

before the state court. *Pinholster*, 131 S.Ct. at 1398.

Ineffective Assistance of Counsel

Petitioner raises two claims of ineffective assistance of counsel.  To prevail, he must

show that counsel's performance was deficient <u>and</u> that the deficient performance prejudiced the

defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In order to establish deficient

performance, a petitioner must show that his counsel's actions "fell below an objective standard

of reasonableness." *Id.* at 689.  Under *Strickland*'s prejudice prong, a petitioner additionally

must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Id.* at 694. " A reasonable

probability requires a 'substantial,' not just 'conceivable,' likelihood of a different result."

*Pinholster*, 131 S. Ct. at 1403 (quoting *Richter*, 131 S. Ct. at 791).  Conclusory assertions of

prejudice are insufficient.  *Green v. Johnson,* 160 F.3d 1029, 1041 (5th Cir. 1998).

<u>Failure to Obtain a Qualified Firearms/Ballistics Forensic Expert (Claim 1)</u>

Petitioner alleges counsel rendered ineffective assistance because he failed "to obtain a qualified firearms/ballistics forensic expert witness to testify on petitioner's behalf at trial concerning the videotape of the shooting." (Doc. 3 at 11.) Relying on Barry G. Dickey's *Preliminary Expert Report*, which Petitioner presented to the state court, Petitioner asserts that an expert could have testified that he "did not and could not have aimed and fired the gun at the officer." *Id.* at 14 and 24-27.

The state habeas court rejected this claim:

> The Court finds that there is enough credible evidence that the Applicant shot at the officer by pointing his weapon out the open window, therefore, counsel was not ineffective as Applicant alleges.... Accordingly, the Court concludes that Applicant's complaint of ineffective assistance of trial counsel is without merit and should be denied.

SHCR-4 2439976 at 5.[5]

Even assuming counsel rendered deficient performance in failing to secure a qualified expert, Petitioner cannot show prejudice. The overwhelming evidence at trial, including the strong eye-witness testimony, established that Petitioner fired directly at Lieutenant Watson. Although the events at issue occurred at night, Lieutenant Watson confirmed Petitioner's car was fully illuminated by the police cruiser's spotlight. 5 RR 38, 89. Lieutenant Watson also testified repeatedly that Petitioner fired *directly* at him. *E.g.*, 5 RR 26-27, 42, 55-56, 58, 71. From his position on the left side of the patrol car, behind the driver's side door, Lieutenant Watson saw the muzzle-flash was not "elongated," but was "directly on." 5 RR 38, 56, 58. While admitting

---

[5] Since the TCCA declined to adopt finding twelve, *see Ex parte Franco*, 2011 WL 3761348, at *1, the Court need not address Petitioner's assertion that finding twelve is unreasonable. (Doc. 3 at 13-14.)

that the dashboard video, which was located on the right side of the patrol car, indicated an elongated flash, Lieutenant Watson testified that he observed a "round" muzzle-flash from his actual position.  5 RR 53, 58, 81.  In addition, Joshua Carter, who witnessed the shooting from a nearby house, testified that Petitioner fired at Lieutenant Watson through an open window in his car and on a horizontal plane with the ground.  5 RR 89-93.

In light of the strong eye-witness testimony, the significance of the videotaped-muzzle-flash is virtually inconsequential.  *See e.g.*, 5 RR 73-80 (demonstrating the difficulty in determining angular relationship between the two vehicles and the camera).  While Petitioner surmises that the jury would have heeded an expert report and disregarded the direct eye-witness testimony, his argument is conclusory and, at best, implausible.  In addition, Petitioner's suggestion that the position of the driver side window made it difficult for Petitioner to properly aim the revolver at Lieutenant Watson and, thus, refutes any  intent to kill Lieutenant Watson, is simply unsupported.

Respondent correctly notes that, through cross examination of the State's ballistic expert, trial counsel was able to advance the defense strategy that an elongated flash, as observed on the videotape, suggested that Petitioner did not fire directly at Lieutenant Watson.  *See e.g.*, 7 RR 12-17.  In fact, in response to trial counsel's questions, the State expert testified that a uniform or round muzzle-flash pattern is generally observed from the point of view of the target when a firearm is fired.  *See* 6 RR 33-34.  Thus, since similar evidence and arguments were presented to and rejected by the jury, Petitioner cannot establish prejudice.

In sum, the record supports the conclusions of the state habeas court that Petitioner was

not prejudiced as a result of his counsel's failure to secure the testimony of a ballistics expert

because there was "enough [other] credible evidence that the Applicant shot at the officer by

pointing his weapon out the open window."  *See Renico v. Lett*, 559 U.S. ___, 130 S. Ct. 1855,

1866 (2010) (federal courts are prohibited "from using federal habeas corpus review as a vehicle

to second-guess the reasonable decisions of state courts").  Consequently, Petitioner has failed to

carry his burden of demonstrating that the state court's decision rejecting his first claim of

ineffective assistance of counsel was an unreasonable application of clearly established federal

law.

> Failure to Investigate and Challenge False or Erroneous Testimony (Claim 2)

Next, Petitioner asserts that defense counsel was "ineffective in failing to investigate and

discover that State's Exhibits 7 and 27 showed that the driver's side window was opened only

slightly, thus contradicting the State's witnesses' testimony that the window was rolled down."

(Doc. 2 at 3.)  Relying on Dickey's report, he alleges that "State's Exhibits 7 and 27 show that

the window was rolled up almost to the top so that Petitioner's hand had very limited range of

motion, resulting in the gun being fired at an angle away from the police officer."  (Doc. 3 at 18.)

If counsel had "adequately investigated this matter, [Petitioner surmises that] he could have

presented testimony to this effect and competently challenged the State's witnesses' false or

erroneous testimony that the window was rolled down."  *Id.*

The state habeas court rejected this claim relying in part on the affidavit of Paul Brauchle,

Petitioner's trial counsel.

> 4. The Court finds that the driver's side car door that is seen in State's Exhibit 7 is
> the rear door, not the driver's door. (*See* Sworn Statement of Paul Brauchle).

5. This Court, therefore, finds that State's Exhibit 7 does not show the position of the driver's window of the Applicant's vehicle.

\*\*\*

7. Applicant asserts that counsel was ineffective for failing to investigate and argue that because the window of the vehicle was rolled up in State's Exhibit 7 and 27, that the window was necessarily rolled up during the commission of the offense and, therefore, Applicant could not have fired the weapon as alleged in the offense.

8. This Court finds the sworn statement of Paul Brauchle to be credible. (See Sworn Statement file stamped Jan 5, 2011).

9. Contrary to Applicant's assertion, the Court finds that Mr. Brauchle explains that he attempted to investigate and discover that the driver's side window was not rolled down, and in this vein, he reviewed the 72 photographs taken by police of the crime scene and vehicle. Mr. Brauchle notes, none of the photographs clearly depicted the position of the  window.

10. Accordingly, the Court finds that counsel did investigate whether the window was rolled up during the offense and, therefore, counsel was not ineffective.

11. To the extent Applicant contends that: counsel was ineffective for failing to argue to the jury that the window was rolled up during the offense, the Court finds, and counsel states in his affidavit, that the offense was recorded on the officer's in-car camera. (*See* Sworn Statement).  Moreover, this Court finds that at the time when the Applicant fired his weapon, he was seated in the driver's seat of his vehicle with the doors closed and the front driver's side window open. (*See* RR5: 26, 27, 89).

SHCR-4  2439976 at 3-4.[6]

Contrary to Petitioner's assertion, neither exhibit 7 nor 27 (photographs taken one or more hours *after* the shooting) show the position of the driver's side window *at the time* Petitioner fired his revolver at Lieutenant Watson.  Immediately after the shooting, Petitioner remained unsecured in his vehicle for a few minutes.  He then placed both hands through the

---

[6] Since the TCCA declined to adopt finding six, *see Ex parte Franco*, 2011 WL 3761348, at \*1, the Court need not address Petitioner's assertion that it is unreasonable.  (Doc. 3 at 18.)

driver's side window, as established in the videotape from the police in-car camera, before the police secured him.   (Doc. 12, Exh. A at 12.)  Petitioner's own expert also concluded that the position of the driver's side window, purportedly suggested in Exhibit 7 and 27, was inconsistent with the evidence closer to the time of the shooting.  *Id.*

Moreover, as reiterated in his affidavit to the state habeas court, defense counsel investigated the position of the driver's side window.  He examined the 72 photographs taken by the police, concluding they did not conclusively establish the position of the driver's side window.  SHCR-4  2439976 at 8.  Counsel also capably and forcefully cross examined the State's witness (the police officer who took the 72 photographs) for failing to capture the position of the driver's side window so that the jury could have had conclusive proof on that issue.  5 RR 170-71.  Notwithstanding, Petitioner cannot show prejudice, namely a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 687.  The videotape evidence and the eye-witness testimony clearly established that the window position did not prevent Petitioner from shooting directly at Lieutenant Watson or from placing his hands outside the window.  In addition, the police officer who photographed Exhibits 7 and 27 stated that the driver's side window was open at the time he took the photographs.  5 RR 181.

Based on this Court's review of the state court record, Petitioner has failed to demonstrate that the state court's decision rejecting his second claim of ineffective assistance of counsel was an unreasonable application of clearly established federal law.  Accordingly, his second claim also fails.

Request for Evidentiary Hearing

Lastly, as an alternative to the Court's granting habeas relief, Petitioner requests an evidentiary hearing to develop the record in support of his claims.  (Doc. 3 at 18.)  However, section 2254 review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster,* 131 S. Ct. 1388, 1398; *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).

Just as in *Pinholster*, Petitioner's habeas petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court.  As discussed above, Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court.  In addition, his case is distinguishable from *Morris v. Thaler*, 425 Fed. Appx. 415, 422, 423 n.1 (5th Cir. 2011) (unpublished *per curiam*), where the United States Court of Appeals for the Fifth Circuit found the state court had unreasonably applied *Strickland* in rejecting the state habeas application and, thus, an evidentiary hearing was necessary not to evaluate the state court's decision, but to determine whether the petitioner's allegations were true.  Therefore, Petitioner is not entitled to a federal evidentiary hearing.

### III.  RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus be **DENIED**.

SIGNED August 22, 2012.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE